# STATE OF MICHIGAN

# COURT OF APPEALS

JAMES MCKINLEY MILLS,

Plaintiff-Appellee,

and

CITY XPRESS, LLC, MERCY TRANSPORT, LLC, and DETROIT ANESTHESIA GROUP, PLLC,

Intervening-Plaintiffs,

v

TITAN INSURANCE COMPANY,

Defendant-Appellant.

UNPUBLISHED
August 8, 2017

No. 331460
Wayne Circuit Court
LC No. 15-000562-NF

Before: FORT HOOD, P.J., and CAVANAGH and RONAYNE KRAUSE, JJ.

PER CURIAM.

In this action to recover no-fault benefits under the Michigan Assigned Claims Plan (MACP), defendant, the assigned claims insurer, appeals by leave granted the trial court's order granting in part and denying in part defendant's motion for summary disposition under MCR 2.116(C)(10). We affirm.

Plaintiff, a pedestrian, was struck and injured by an unidentified motor vehicle on March 30, 2014 in Clinton Township, Michigan. Because plaintiff did not have no-fault insurance coverage and the driver of the other vehicle could not be identified, plaintiff filed a claim with the MACP to recover benefits pursuant to the no-fault act, MCL 500.3101 *et seq*. Defendant was assigned to provide coverage for plaintiff's accident. Plaintiff subsequently filed this action, alleging that defendant failed to pay benefits that were due. In his complaint, plaintiff stated that he "sustained injuries which required medical treatment, rehabilitation treatment, household replacement services, attendant care services, prescription items and medical appliances, wage loss benefits, and other [unspecified] benefits . . . ." Intervening plaintiffs joined the action to

-1-

recover for medical services provided to plaintiff.[1]  As relevant to this appeal, defendant moved for summary disposition pursuant to MCR 2.116(C)(10), arguing that plaintiff's claims for benefits pursuant to the no-fault act were barred in their entirety because plaintiff submitted fraudulent documentation in support of his claim for attendant care services.  The trial court granted defendant's motion in part, dismissing with prejudice plaintiff's attendant care claims.  After defendant filed an application for leave to appeal the trial court's order, this Court granted defendant's application.[2]

On appeal, defendant argues that the trial court erred by dismissing only plaintiff's attendant care claims, rather than dismissing the action in its entirety.  We disagree.

This Court reviews de novo a trial court's decision regarding a motion for summary disposition.  *McLean v Dearborn*, 302 Mich App 68, 72; 836 NW2d 916 (2013).

> In reviewing a motion under MCR 2.116(C)(10), the trial court considers affidavits, pleadings, depositions, admissions, and other evidence introduced by the parties to determine whether no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  The evidence submitted must be considered in the light most favorable to the opposing party.  [*Id*. at 73 (citations and quotation marks omitted).]

As an initial matter, we note that defendant premised its motion for summary disposition on this Court's decision in *Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420; 864 NW2d 609 (2014).  In that case, this Court held that a fraud exclusion in a no-fault insurance policy precluded the plaintiff's claim for no-fault benefits where there was no genuine issue of material fact regarding the plaintiff's fraud.  *Id*. at 425-426.  In *Bahri*, the plaintiff had sought household replacement services for a period from October 1, 2011 to February 29, 2011, although the motor vehicle accident at issue in that case had not even taken place until October 20, 2011.  *Id*. at 425.  The plaintiff was also surveilled and found to be "performing activities inconsistent with her claimed limitations."  *Id*.

Defendant urges us to conclude that *Bahri* controls the disposition of this case and hold that plaintiff's alleged fraudulent conduct with respect to his attendant care claims should bar the remainder of his claims.  However, we agree with plaintiff that *Bahri* is distinguishable and

---

[1] In his brief on appeal, plaintiff argues that intervening-plaintiffs, as medical providers, "may sue the responsible no-fault [personal injury protection] PIP insurer for a patient's unpaid medical bills."  We recognize that the Michigan Supreme Court recently held in *Covenant Med Ctr v State Farm Mut Auto Ins Co*, ___ Mich ___, ___; 895 NW2d 490 (2017) (Docket No. 152758); slip op at 24, 25, that a medical provider does not possess a statutory cause of action pursuant to the no-fault act, MCL 500.3101 *et seq*., to pursue a no-fault insurer for PIP benefits.  However, the propriety of intervening-plaintiffs' claims is not at issue in this appeal.

[2] *Mills v Titan Ins Co*, unpublished order of the Court of Appeals, entered June 2, 2016 (Docket No. 331460).

therefore not dispositive. For example, *Bahri* involved the application of a fraud exclusion provision in a no-fault insurance policy. The policy provision in *Bahri* provided, in pertinent part, that "[the defendant insurance company] [does] not provide coverage for any insured who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under the policy." *Id*. at 423-424. In contrast, at issue here is plaintiff's right to receive benefits through the MACP, and plaintiff's recovery is governed by the statutory provisions of the no-fault act. Our conclusion is consistent with this Court's recent decision in *Shelton v Auto-Owners Ins Co*, 318 Mich App 648, ___; ___ NW2d ___ (2017); slip op at 3, where this Court recognized, in pertinent part, as follows:

> The law governing application of the policy exclusion in *Bahri* is not applicable in this case. In *Bahri*, the provision applied to the plaintiff in that case because "[the] defendant issued [the subject] no-fault automobile policy to [the] plaintiff." *Bahri*, 308 Mich App at 421. In this case, however, [the] plaintiff was not a party to, nor an insured under, the policy; she was injured while a passenger and because neither she nor her spouse or resident relative had a no-fault policy, *defendant was required to pay her benefits pursuant to statute, not pursuant to a contractual agreement.* [Emphasis added.]

In *Shelton*, the plaintiff was injured while a passenger in a single-car collision, and she pursued the defendant for personal injury protection (PIP) benefits where she did not own a motor vehicle or reside with a relative who owned a motor vehicle. *Id*.; slip op at 2. The *Shelton* Court went on to recognize that "the exclusionary [fraud] provision in defendant's no-fault policy does not apply to plaintiff and cannot operate to bar plaintiff's claim." *Id*.; slip op at 3.

The applicable no-fault statute in this case is MCL 500.3173a(2), which provides, in pertinent part, as follows:

> A person who presents or causes to be presented an oral or written statement, including computer-generated information, as part of or in support of a claim to the Michigan automobile insurance placement facility for payment or another benefit *knowing that the statement contains false information concerning a fact or thing material to the claim commits a fraudulent insurance act under [MCL 500.4503] that is subject to the penalties imposed under [MCL 500.4511]. A claim that contains or is supported by a fraudulent insurance act as described in this subsection is ineligible for payment or benefits under the assigned claims plan.* [Emphasis added.][3]

---

[3] As relevant to this appeal, MCL 500.4503 provides, in pertinent part, as follows:

A fraudulent insurance act includes, but is not limited to, acts or omissions committed by any person who knowingly, and with an intent to injure, defraud, or deceive:

* * *

In *Covenant Med Ctr v State Farm Mut Auto Ins Co*, ___ Mich ___, ___ ; 895 NW2d 490 (2017) (Docket No. 152758); slip op at 6, the Michigan Supreme Court recently articulated the applicable rules of statutory construction:

> [The Court of Appeals] . . . reviews de novo questions of statutory interpretation. The role of [the Court of Appeals] in interpreting statutory language is to ascertain the legislative intent that may reasonably be inferred from the words in a statute. The focus of [the Court's] analysis must be the statute's express language, which offers the most reliable evidence of the Legislature's intent. When the statutory language is clear and unambiguous, judicial construction is not permitted and the statute is enforced as written. [A] court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself. [Footnotes, citations and quotation marks omitted.]

MCL 500.3173a(2) defines "a fraudulent insurance act" as occurring when "[a] person . . . presents or causes to be presented an oral or written statement, including computer-generated information, as part of or in support of a claim to the Michigan automobile insurance placement facility for payment or another benefit *knowing that the statement contains false information concerning a fact or thing material to the claim*." (Emphasis added.) This definition is consistent with the statutory language of MCL 500.4503(c) and (d). Notably, MCL 500.4503 narrows the focus of that statutory provision, and refers to "acts . . . committed by any person . . . knowingly," and requires "an intent to . . . defraud[ ] or deceive[.]"

The record evidence contained the deposition testimony and attendant care and household replacement services forms of Angela Bakeley and Jean Mitchell, two women with whom

---

(c) Presents or causes to be presented to or by any insurer, any oral or written statement including computer-generated information as part of, or in support of, a claim for payment or other benefit pursuant to an insurance policy, knowing that the statement contains false information concerning any fact or thing material to the claim.

(d) Assists, abets, solicits, or conspires with another to prepare or make any oral or written statement including computer-generated documents that is intended to be presented to or by any insurer in connection with, or in support of, any claim for payment or other benefit pursuant to an insurance policy, knowing that the statement contains any false information concerning any fact or thing material to the claim.

* * *

(i) Knowingly and willfully assists, conspires with, or urges any person to fraudulently violate [MCL 500.4501 *et seq*.], or any person who due to that assistance, conspiracy, or urging knowingly and willfully benefits from the proceeds derived from the fraud.

plaintiff had personal relationships who assisted him following the motor vehicle accident at issue. In support of its motion for summary disposition, defendant included Bakeley's attendant care claim forms dated July 14, 2014, in which she represented that she provided attendant care to plaintiff from March 31, 2014 until July 31, 2014, with the exception of May 2 through May 7, 2014. Defendant also included Bakeley's household replacement services statements dated July 14, 2014, indicating that she provided services from April 1, 2014 through July 17, 2014. Defendant also provided the trial court with Mitchell's June 2014 attendant care claim forms, dated "June 2014[,]" in which Mitchell represented that she provided attendant care for plaintiff from June 15, 2014, until June 31, 2014.[4] Mitchell also signed an attendant care form dated "July 2014[,]" in which she represented that she provided attendant care services to plaintiff from July 1, 2014 until July 31, 2014.

Defendant also included the deposition testimony of plaintiff. His deposition testimony, as well as that of Bakeley and Mills, can be characterized as unclear, confusing and disjointed. For example, in her November 19, 2015 deposition, Bakely alternatively testified that plaintiff began living with her "[s]ince his [motor vehicle] accident[,]" and "a couple weeks" after the motor vehicle accident. Bakeley would help plaintiff with "dressing [himself], bathing, shaving, helping him to get out [of] the bed and things of that nature[ ]" until he left her home on an unspecified date in either July or August of 2014. Bakeley later testified that plaintiff was able to get himself dressed, but that she would help him with taking a shower, and overall she would assist plaintiff with "personal" matters two to three hours a day on a regular basis. Bakeley testified that she did not drive plaintiff anywhere or make meals for him or do his laundry, and it appeared from her deposition testimony that she opined that plaintiff was capable of completing these tasks on his own. Bakeley further testified that she filled out the attendant care forms and household replacement services statements at the same time, and she did so because "[plaintiff] had got a call from his lawyer and his lawyer had said to do it all at once and fax those back to [plaintiff's lawyer.]" According to Bakeley's testimony toward the conclusion of her deposition, plaintiff left her home on an unspecified date in July 2014 after only staying with her intermittently throughout July 2014, and she filled out the attendant care forms for defendant the way that she did, even though plaintiff did not reside with her every day in July 2014, "[b]ecause [plaintiff] stated that his lawyer stated to do that like that [sic]."

Mitchell testified during her May 5, 2015 deposition that beginning on an unspecified date in June 2014 when plaintiff moved in with her, she would assist plaintiff with attendant care matters such as assisting plaintiff in making his way to the shower and bathroom and "household chores." Mitchell also made sure that plaintiff took his prescribed medication. As of the date of her deposition, May 5, 2015, Mitchell was continuing to assist plaintiff, who was still in a great deal of pain and "[h]aving a lot of difficulty[ ]" arising from the March 30, 2014 motor vehicle accident. Plaintiff testified that following his March 30, 2014 motor vehicle accident, he resided with Bakeley for approximately two months, and that she would help him with attendant care and household services for about 16 hours a day for that time period. Plaintiff then moved "back home[ ]" with Mitchell, who, up until the date of his May 5, 2015 deposition, would assist him

---

[4] The last day of June is, in fact, the 30th.

with attendant care and household services. According to plaintiff, Bakeley was compensated for her services out of proceeds from plaintiff's no-fault insurance claim, but Mitchell had not yet been compensated. Notably, during his deposition, plaintiff was not presented with copies of Bakeley's and Mitchell's attendant care forms and household replacement services statements, and was not questioned with regard to any knowledge he may have had regarding how the forms were completed. Likewise, Mitchell was not questioned concerning how she completed the forms and statements at issue.

During the hearing on defendant's motion for summary disposition, the trial court recognized that there was evidence of fraudulent conduct in the record.

> You know what? Here's the thing. Even if we separate this, somebody is lying, okay. No. Listen. Dealt with this for years over in criminal [court]. You can't fool me. Somebody is lying.
>
> Somebody is trying to be compensated for services either they didn't perform, okay, or just the other person performed and they want to just tag along, okay.
>
> But the reality is, they put in forms covering dates that two of these people didn't performs [sic] together. And that's by the testimony of the plaintiff.

During the motion hearing, plaintiff's counsel informed the trial court that "there is nothing in [plaintiff's] testimony to show that [plaintiff has] committed fraud, and he's the underlying [p]laintiff." Plaintiff's counsel further informed the trial court that plaintiff's counsel submitted Bakeley's attendant care and household replacement services forms to defendant after they were apparently submitted to him by plaintiff, but he could not recall whether plaintiff directly tendered to him the forms pertaining to Mitchell. According to plaintiff's counsel at one point during the motion hearing, "one thing to keep in mind is [Mitchell's claim forms] were never submitted by [plaintiff] [to defendant]." Plaintiff's counsel essentially characterized the questionable claim forms as the result of inadvertence, repeatedly emphasizing that Mitchell's claim forms for June 2014 and July 2014 were not submitted to defendant for payment.

The trial court ultimately decided to strike the attendant care portion of plaintiff's claims, stating, "[t]here's no question there's fraud here. There's no question." The trial court went on to hold:

> I know you [defendant] want the whole claim to be dismissed. But the Court can't determine whether or not the plaintiff himself orchestrated this, or we have a competing interest with these two ladies, and I'm just going to leave it at that; okay? You don't know.

The trial court later stated that it was striking the attendant care portion of plaintiff's claims "because I can't tell who did what." Moreover, the trial court indicated its hesitance to impose the "extreme remedy . . . or penalty" of dismissing the entirety of plaintiff's claims without a showing that plaintiff was aware of, and participating and engaging in, any fraudulent conduct. Put another way, it is clear from the record that the trial court was unable to determine whether plaintiff had an intent to defraud or deceive defendant. MCL 500.4503.

The trial court's ultimate decision conformed with the plain language of MCL 500.3173a(2), which states that "a fraudulent insurance act" requires a showing that one acted "knowing that the statement contains false information concerning a fact or thing material to the claim . . . [.]" While the record evidence is no doubt contradictory, conflicting and often times confusing with regard to when Bakeley and Mitchell provided attendant care and household replacement services for plaintiff following his motor vehicle accident, it is also devoid of any indication of plaintiff's involvement in, or understanding or awareness of, the submission of the claim forms by Bakeley and Mitchell with regard to attendant care and household replacement services. Put another way, as the trial court aptly recognized, the record does not contain any indication that plaintiff "[knew] that the statements [submitted by Bakeley and Mitchell] contained false information concerning a fact or thing material to the claim . . . ."[5] MCL 500.3173a(2). Accordingly, we conclude that the trial court correctly denied summary disposition of the remainder of plaintiff's no-fault claims.

Affirmed. We do not retain jurisdiction. Plaintiff, as the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Karen M. Fort Hood
/s/ Mark J. Cavanagh

---

[5] While not dispositive to our analysis, we note that plaintiff, in his response to defendant's motion for summary disposition and in his brief on appeal, observes that Mitchell's claim forms had not been in fact tendered to defendant for payment, but were submitted to defendant inadvertently in response to a discovery request.